# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:13-cv-691-RJC

| | |
|---|---|
| BANK OF AMERICA, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CORPOREX COMPANIES, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Defendants' motion to dismiss and supporting memorandum, (Docs. 4, 8), Plaintiff's response, (Doc. 14), the Magistrate Judge's Memorandum and Recommendation, (M&R) (Doc. 18), the Plaintiff's objection and supporting memorandum, (Docs. 19, 24-1), and Defendants' responses thereto (Docs. 20, 25). It is ripe for review.

## I. FACTUAL BACKGROUND

This case involves a series of allegedly fraudulent transfers between Corporex Realty and Defendant Corporex Companies. In general terms, Plaintiff Bank of America alleges that Corporex Companies is a shell company established by Defendants to drain the assets of Corporex Realty. Specifically, Bank of America alleges that Corporex Realty transferred assets fraudulently to Corporex Companies in order to avoid paying a judgment to Bank of America.

Although this case involves numerous business entities, the crux of the allegations centers on the relationship between Corporex Realty, Corporex Companies, and Bank of America. Bank of America is a national bank headquartered in North Carolina. Defendant Corporex Companies is a limited liability company headquartered in Kentucky. Defendants Butler and Banta are officers of Corporex Companies and residents of Kentucky.

1

Between 2005 and 2008, Corporex Realty guaranteed three loans obtained by affiliate companies (borrowers) from LaSalle Bank (LaSalle), an Illinois company. Defendants maintain that their contacts with LaSalle were limited to communications related to the loan contracts that were conducted with personnel from LaSalle's office in Cincinnati, Ohio.

At some point after the finalization of the loan contracts but before the transfer of assets by Corporex Realty, Bank of America purchased LaSalle bank and obtained, as successor, the rights and obligations under the loan contracts. Following default on the loans, Bank of America brought foreclosure actions in June 2011 against the borrowers in Kentucky and Florida. (Docs. 1, 18). At the same time, Plaintiff filed suit against Corporex Realty for damages in excess of $30 million in connection with the loans. (Doc. 1). That action was originally filed in the Southern District of Ohio but was removed to the Eastern District of Kentucky. (Doc. 18).

Bank of America alleges that, after receiving notice of the foreclosure actions, Defendants Butler and Banta stripped Corporex Realty of its assets and transferred them to Corporex Companies with the express purpose of preventing Bank of America from recovering on the defaulted loans. (Docs. 1, 19). Further, Bank of America alleges that Corporex Realty transferred its assets without obtaining its consent and that such actions violated the terms of the loan agreements, whereby the parties agreed not to sell, transfer, or assign its assets without consent from the counter-party. As evidence of intent to defraud, Bank of America claims that it was the sole counter-party to whom notice of the transfers was not given and from whom consent was not obtained. Such actions, Bank of America contends, evince an intent by Defendants to harm Bank of America by placing assets out of its reach while leaving them accessible to all other counter-parties.

Plaintiff filed this suit against Defendants to rescind certain transfers of assets from Corporex Realty to Corporex Companies. (Id.). Defendants moved to dismiss for lack of personal jurisdiction or, alternatively, to transfer to the Eastern District of Kentucky. (Doc. 18). The Magistrate Judge recommended that this Court deny the motion to dismiss for lack of personal jurisdiction but grant the motion to transfer. (Id.).

## II. STANDARD OF REVIEW

The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). A written objection to a magistrate judge's recommendation must identify the portion of the proposed findings or recommendations to which objection is made and state the basis for such objection. Orpiano v. Johnson, 687 F.2d 44 (4th Cir. 1982). De novo review is not necessary where a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations. See United States v. Mertz, 376 U.S. 192 (1964).

Each of the parties has objected to one aspect of the M&R: Defendants object that the Court lacks personal jurisdiction over them; Plaintiff objects that transfer is not warranted in this case. The Court reviews each of these questions de novo.

## III. DISCUSSION

### A. Personal Jurisdiction

The Plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). In considering this challenge, the Court construes all relevant pleading allegations in the light most favorable to

Plaintiff. See Id. In a diversity action, a federal court may exercise jurisdiction over a nonresident if the state court where it sits could assert jurisdiction. FED. R. CIV. P. 4(k)(1)(A). Personal jurisdiction is proper when authorized by the state's long-arm statute, and when the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted). The applicable provision of the North Carolina long-arm statute authorizes personal jurisdiction to the extent allowed by due process. N.C. GEN. STAT. § 1-75.4(1)(d); Vishay Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1065 (4th Cir. 1982). The inquiry whether a forum state may assert specific jurisdiction focuses on the relationship among the Defendants, the forum, and the litigation. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984).

This case presents an unusual confluence of factors insofar as Plaintiff concedes that Defendants have few contacts with North Carolina, but instead contends that specific jurisdiction exists due to the fact that the effects of Defendants' tortious conduct were felt in North Carolina because that is where the headquarters of Bank of America is located. In determining whether specific jurisdiction exists, courts consider: (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities within the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and, (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002), cert. denied, 537 U.S. 1105 (2003).

Having examined the relevant allegations, this Court finds that Defendants lack sufficient contacts with North Carolina and that the exercise of personal jurisdiction would not accord with due process requirements. In reaching such a holding, the Court declines to address

the more complicated inquiry as to whether Butler and Banta were acting independently or on behalf of Corporex Realty, as the facts do not support a finding that the court has jurisdiction over any of the Defendants.

This case is distinguishable in material respects from those cited by Plaintiffs in support. In Saxon v. Smith, 479 S.E.2d 788 (N.C. App. 1997), North Carolina courts found personal jurisdiction to exist for a malicious prosecution claim where defendant contacted plaintiff in North Carolina both by telephone and letter to discuss the purchase of an antique rifle by defendant and filed a criminal complaint to police in Virginia which led to plaintiff's arrest in North Carolina. In EPlus Technologies Inc. v. Aboud, 313 F.3d 166 (4th Cir. 2002), the Fourth Circuit found that personal jurisdiction existed where Defendant had submitted false information on credit applications to two companies in Virginia and provided false information to a third with the intent that businesses in Virginia rely on such information.

Here, there are no facts to suggest that Defendants have any contacts with North Carolina other than that an injury attributable to tortious behavior on their part was felt at Plaintiff's headquarters. Plaintiff has not alleged that Defendants had any communications with, or made any solicitations of, parties located in North Carolina at that time of such communications. Defendants negotiated the loans with personnel from the Cincinnati office of LaSalle, an Illinois bank. No facts are alleged that Defendants solicited business from Plaintiffs in North Carolina or elsewhere; they did not negotiate the terms of the loans in North Carolina; they did not choose North Carolina to govern the agreements; they did not make any communications—false or otherwise—with persons in North Carolina. Indeed, aside from the resulting injury, Plaintiff has not alleged that any aspect of the fraudulent transfer involved activity occurring in North Carolina. The sole significance of North Carolina in this case is that it happens to be the location

where Plaintiff is headquartered. On balance, the evidence supports a finding that, but for Plaintiff's purchase of LaSalle bank, North Carolina would have nothing to do with any of the facts or parties in this case.

This case is most similar to the one analyzed recently by the Supreme Court in <u>Walden v. Fiore</u>, 134 S. Ct. 1115 (2014). In <u>Walden</u>, the Supreme Court reviewed whether a district court in Nevada could exercise personal jurisdiction over a Georgia police officer who seized large amounts of cash from plaintiffs while they were at a Georgia airport traveling back to their residence in Nevada. The plaintiffs contended that, by delaying the return of their money, the balance of the harm of the tortious behavior took place in Nevada where the injury—the inability to access funds—was felt. While accepting that the injury was felt in Nevada, the Supreme Court found that this factor, standing alone, was not sufficient to establish minimum contact as such inquiries focused exclusively on the relationship between the plaintiff and the forum state. <u>Id.</u> at 1122 (citing <u>Helicopteros Nacionales de Columbia</u>, 466 U.S. 408, 417 (1984)).

Plaintiff has not alleged that Defendants had any contacts with North Carolina, but contend that jurisdiction is proper as the effects of the injury were felt in North Carolina where Plaintiff has its headquarters. As support, Plaintiff cites <u>Calder v. Jones</u>, 465 U.S. 783 (1984), wherein the Supreme Court found a Florida reporter and editor subject to personal jurisdiction in California based primarily on the fact that, although published throughout the United States, the effects of their libel were felt primarily in California where the victim resided. The Court in <u>Walden</u>, however, distinguished the facts of that case from those in <u>Calder</u>, where defendants made phone calls to California sources for the information used in the article, wrote the story about plaintiff's alleged activities in California, and circulated the article containing the libelous material throughout California. <u>Walden</u>, 134 S. Ct. at 1123. Most significantly, the Court

6

recognized that the finding of personal jurisdiction turned, in large measure, on the unique nature of the libel tort, holding that:

> The crux of Calder was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However, scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. . . . Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel . . . the defendants' intentional tort actually occurred *in* California. . . . In this way, the "effects" caused by the defendants article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants conduct to *California*, not just to a plaintiff who lived there.

Walden, 134 S. Ct. at 1123-24 (citations omitted) (emphasis in original).

The facts in this case more closely resemble those in Walden than in Calder. Simply stated, the sole connection between the Defendants and North Carolina is that Plaintiff resides in this state. To accept Plaintiff's arguments would be to conclude that defendants in virtually all cases alleging fraudulent transfer (where the defendant knew that Plaintiff resided in a certain state) would subject to jurisdiction in the plaintiff's district merely by virtue of the fact that an alleged injury was felt there. Furthermore, where multiple parties claimed an injury, a defendant might be subject to personal jurisdiction in a variety of jurisdictions based on this fact alone.

The allegations stated establish a connection between the Defendants and the Plaintiff; they do not necessarily establish a connection between Defendants and the state of North Carolina. To be sure, the fact that an injury is felt in a given state is a significant one in determining whether sufficient contacts exist. It is not immediately dispositive, however, as jurisdiction ultimately depends on contacts with the forum state rather than a connection to a party residing there. Rejecting a similar argument to the one presented here, the Court in Walden

7

clarified the distinction between contacts with a plaintiff and with a forum state:

> Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. . . . It obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.

Id. at 1125 (citation omitted).

Here, the fact that Defendants directed their actions against a party in North Carolina is not sufficient, standing alone, to confer jurisdiction over the parties where no other facts exist to support such. To rule otherwise would be to risk exercising personal jurisdiction for torts wherever a plaintiff happened be located because that is where the injury would be felt most strongly. Due process requires sufficient minimum contacts between a defendant and a forum state, not merely between a defendant and a plaintiff. Here, the contacts between Defendants and North Carolina are not sufficient to establish personal jurisdiction.

For this reason, the Court grants Defendants' objection to the M&R and finds that this Court lacks personal jurisdiction over Defendants. Having found personal jurisdiction to be lacking in this case, the Court declines to address the motion to transfer. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999). Accordingly, the Court **grants** Defendants' motion to dismiss for lack of personal jurisdiction, (Doc. 4), and **dismisses** this case without prejudice.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that: Defendants motion to dismiss for lack of personal jurisdiction, (Doc. 4), is **granted** and this case is **dismissed without prejudice**. The Clerk of Court is directed to close this case.

Signed: July 28, 2014

Robert J. Conrad, Jr.
United States District Judge